IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WILLIAM FLOYD GAY,

      Petitioner,

v.                                                          CASE NO. 5:08-cv-299-RS-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 47, Petitioner's *pro se* Second Amended

Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  The Petition stems

from Petitioner's Bay County jury-trial conviction for aggravated battery, for which he

received a 15-year sentence as a prison releasee reoffender and a 30-year sentence as

a habitual violent felony offender, with the sentences to run concurrently with each other

and consecutively to a probation-violator sentence stemming from a 1992 second

degree murder conviction.  Respondent filed responses and an appendix with relevant

portions of the state-court record, and Petitioner filed a reply.  Docs. 27, 50, 53.  Upon

due consideration of the Petition, the Responses, the Reply, and the state-court record,

the undersigned recommends that the Petition be denied.[1]

## State-Court Proceedings

The relevant portions of the record may be summarized as follows.  Petitioner

_____

[1]Because the Court may resolve the Petition on the basis of the record, the Court
has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules
Governing Habeas Corpus Petitions Under Section 2254.

was charged by information with committing battery upon Sheila Ann Finch by striking

her with a fist, causing permanent disfigurement, disability, and/or serious bodily injury,

in violation of Fla. Stat. § "784.045(1)(a)2."  Respondent's Appendix Exhibit ("App. Exh.")

B at 15.   At trial, following the close of the state's case-in-chief, Petitioner's counsel,

Doug White, moved for a judgment of acquittal on the ground that the information was

fatally defective because it did not list the elements of battery and aggravated battery

and did not cite the correct subsection of the statute.  *Id*. Exh. C at 156-57.  After

entertaining argument by counsel, the trial court denied the motion for acquittal but held

that the case could go to the jury only on the lesser included offense of felony battery.

*Id*. at 194.  The court's minutes reflect that the motion for judgment of acquittal was

denied.  App. Exh. B. at 28-29.  When trial resumed the following day, the State moved

for reconsideration.  After the court considered additional argument and authorities

presented by the parties, the court reversed its ruling and allowed the case to go to the

jury on the aggravated battery charge.  App. Exh. C at 290.  The jury was unable to

reach a unanimous verdict, and the court declared a mistrial.  *Id*. at 367.

　　　The State filed an amended information charging Petitioner with aggravated

battery.  Petitioner moved to dismiss the amended information on the ground that the

court had issued "a Final Order acquitting the Defendant of the charge of Aggravated

Battery," and that such order "was an acquittal of the Defendant after jeopardy had

attached."  App. Exh. B. at 36-37.  The court denied the motion, finding that the

amended charge did not constitute double jeopardy because the ruling on the motion for

acquittal "was not a determination in favor of the defendant on the factual issues and 'a

defendant is acquitted <u>only</u> when the ruling of the judge, whatever the label, actually

represents a resolution [in the defendant's favor] correct or not, of some or all of the factual elements of the offense charged.'" *Id*. at 46-47 (citing *State v. James*, 626 So.2d 259 (5th DCA 1993), and *U.S. v. Scott*, 437 U.S. 82 (1978)).

   The State's case against Petitioner focused on the victim's testimony.  Ms. Finch was Petitioner's girlfriend at the time of the incident.  Finch and Petitioner had been drinking with Petitioner's uncle, Dale Skipper, and Skipper's friend William Marshall at Skipper's garage/shed outside of his trailer home.  At some point, Petitioner and Finch went home and Finch went to bed.  When she awoke later that night, Petitioner was gone.  Finch returned to Skipper's shed and learned that Petitioner had left with Marshall's teenage daughter. Finch waited until Petitioner returned, and an argument ensued.  Finch testified that Petitioner threw her to the ground outside the trailer's back porch where some large oak tree roots protruded.  Each time Finch tried to get up, Petitioner pushed her back down. She testified that she yelled for help, but no one came.  Finch went into Skipper's trailer and entered the bathroom to get away from Petitioner, but he forced his way in and began hitting Finch with his fist and open hand. The blows split Finch's lip and knocked out a front tooth.  Petitioner left the bathroom, and Finch left and drove to her friend Candy Lovins's home.  Lovins took Finch to the emergency room where Finch received stitches to close the split lip.  She later went to a dentist who extracted the remaining portion of the tooth and fitted Finch with a temporary tooth.  Finch displayed a scar on her lip and the temporary tooth for the jury.  On cross-examination, Finch testified that the broken tooth had been discolored, but she denied that it was diseased or decayed.  App. Exh. D.

   Lovins testified that Finch came to her home in the early morning hours; Finch

was shaking, crying and covered in blood.   Lovins saw that Finch's lip was cut and her tooth was knocked out, and she observed bruises on Finch's body.  Lovins took Finch to the emergency room for treatment.  Lovins testified that prior to the injury Finch "had a very beautiful smile." *Id*.

ER physician Dr. Stephen Weeks testified that he treated Finch's injuries.  Finch reported that she had been hit, kicked and thrown to the ground.  She had a one-half inch cut through her upper lip, a broken front tooth, bruising along the left side of her chin, a bruise above the right breast, bruising on her left forearm, a large bruise on her left hip, four linear bruises across her back, and tenderness across the back.   Weeks testified that the split lip and broken tooth were consistent with being punched by a fist. He also testified that Finch's "dental fracture had occurred to an area where there was decay, rotten tooth, and that could be addressed at a later time by her dentist." *Id*.

Finch's dentist, Dr. William Sain, testified that Finch came to him with a front tooth broken at the gum line. The remainder of the tooth was extracted, and Sain testified that Finch would need a permanent fixed bridge to replace the tooth. *Id*.

At the close of the State's case-in-chief, the court denied Petitioner's motion for a judgment of acquittal.  Petitioner called Marshall as a defense witness.  Marshall testified that he observed Petitioner and Finch bickering, but did not hear anything that caused him alarm while they were out of his sight.  Marshall saw Finch leave the trailer, but could not see her face well.  He testified that Finch slapped Petitioner, but Petitioner did not respond.  Marshall did not notice anything about Finch's demeanor when she left. *Id*.

Skipper testified that Finch was drinking on the night of the incident, but Petitioner was not.   Skipper observed no difficulty between Petitioner and Finch.  When Finch

returned to the shed later that night, she was intoxicated.  Skipper did not hear an

argument.  As Finch was leaving, she came out to the shed and yelled "Uncle Billy, he

knocked my tooth out."  Petitioner appeared calm, but Finch was angry. Skipper saw

Finch's lip was split and her tooth was missing.  He saw two or three spots of blood on

the collar of her blouse.   When Skipper went into his bathroom, he saw that a

decorative plaque had been knocked off of the wall and cracked, and the toilet paper

holder was knocked off of the wall.  *Id*.

The trial court inquired whether Petitioner understood that he had the right to

testify, and that whether to do so was his own choice independent of counsel's advice.

The court stated "I don't want it coming back if we get a verdict of any sort and then you

come back and say you wanted to testify and your were prevented by your lawyer."

Petitioner responded "I understand what you're saying," and stated that he did not wish

to testify.  *Id*.

The State requested a special jury instruction to follow the battery elements that

"the defendant takes his victim as he finds her and is not excused from guilt because of

a preexisting condition which may have made her more susceptible to injury."  *Id*. at 68.

Petitioner's counsel objected, and the court inquired whether counsel intended to argue

that Finch's tooth fell out because it was bad, in which case the court would give the

instruction.  Counsel reserved the right to comment on that point, and withdrew his

objection.  *Id*.

During closing arguments, Petitioner's counsel argued that the evidence

supported a conclusion that Finch was angry and intoxicated, initiated the argument with

Petitioner, and could have sustained her injuries by tripping and falling on the exposed

tree roots.  Counsel pointed out that Finch's broken tooth "was decayed and had a problem anyway."  In his final remarks, the prosecutor stated "[i]s there anything that you have heard from that stand to support that theory?  And that's what it is, a theory.  He is asking you to assume that's what happened.  And the judge will tell you that you must base your verdict on the evidence and there is no evidence of that or those facts. Nothing.  Not one scintilla."  Petitioner's counsel objected that these remarks appeared to shift the burden of proof to the defense.  The court overruled the objection.  *Id*.

The jury convicted Petitioner of aggravated battery.  *Id*.  On appeal, Petitioner argued that the trial court erred by denying Petitioner's motion for judgment of acquittal on the aggravated battery charge because there was insufficient evidence of great bodily harm, permanent disability or permanent disfigurement.  The First DCA affirmed *per curiam* without opinion.  *Id*. Exh. I.

Petitioner filed a petition for writ of habeas corpus arguing that appellate counsel rendered ineffective assistance for failing to argue that his second trial for aggravated battery was barred by double jeopardy.  After directing the State to file a response, the First DCA denied the petition *per curiam* without opinion.  *Id*. Exh. N.

Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850, alleging that: (1) trial counsel was ineffective because he interfered with Petitioner's right to testify by advising Petitioner that if Petitioner took the stand, "the jury would automatically learn of the violent details of his prior conviction" for the second degree murder of a girlfriend in 1992; (2)  trial counsel failed to investigate and call exculpatory witnesses; (3)  trial counsel failed to seek admission of evidence (a photograph) that was excluded at the first trial; (4) counsel failed to object to the

improper special jury instruction; and (5) counsel was ineffective for failing to object to the fact that the jury was not instructed on the deadly weapon element of aggravated battery.  *Id*. Exh. Q.

The court summarily denied relief as to grounds one, four, and five, and ordered an evidentiary hearing on grounds two and three.  *Id*. Exh. R.  Following the evidentiary hearing, at which Petitioner was represented by appointed counsel, the court denied relief on Petitioner's remaining claims.  Petitioner did not timely appeal, but he subsequently obtained leave to pursue a belated appeal.   The only issues raised in his appeal were (1) that counsel rendered ineffective assistance for failing to object to the special jury instruction, and (2) that counsel rendered ineffective assistance by misadvising him regarding the information that would be disclosed about his prior conviction if he testified.  The First DCA affirmed the denial of postconviction relief on the first issue, but remanded for further proceedings on the second issue.  App. Exh. Z.

On remand, the trial court conducted a second evidentiary hearing.  Petitioner testified that White told him before his first trial that if he testified "the State would bring up my past that I had killed my girlfriend from '92 and for me not to testify."  Petitioner testified that White told him that it would be all right if he testified at his violation of probation hearing because everyone in that proceeding was aware of the circumstances of his murder conviction.  With regard to whether he should testify at his second trial, Petitioner testified that White told him "to keep it like it is and I'll get you off on it the second time."  *Id*. Exh. HH.  Petitioner testified that White never went over with him how to answer the question regarding whether he had been convicted of a felony, and, if so, how many times.  He stated that White never explained to him that this was the only

question the State could ask.  Petitioner testified "I was just led to believe that if I got up here like this right here today that I would definitely go to prison, no doubt, that they would found [sic] out that I had a prior felony from killing my girlfriend in '92, no matter if it was an accident or not and I was convicted of it and I would go to prison."  Petitioner testified that was the reason he decided not to testify at trial.

White testified that during the VOP hearing, the prosecutor "was able to elicit from [Petitioner] some quite temperamental type answers. . . . it was my experience in that VOP with Mr. Gay that he had a temperamental side that I had not seen before that came out in the VOP. . . . [H]e became quite angry at questions [the prosecutor] was asking him and it did not help him."  White testified that "I had made up my mind that I was going to advise him not to testify at the jury trial because of what happened at the VOP.  But, of course, the decision was always going to be his."   On cross-examination, White reiterated that "[w]e talked about how [the prosecutor] stirred him up.  We talked about how dangerous it would be if he showed that sort of temper in front of a jury . . . . I advised him that if he took the stand and acted like he did in the VOP hearing when [the prosecutor] got his temper up, got his dander up that it would be disastrous to him, yes, I did advise him that."

When asked whether he ever told Petitioner that if he were to testify the jury would automatically learn the violent details of his prior conviction, White responded "[a]bsolutely not."  He testified that he had never advised a client in such a manner, stating "I don't know why I would, it is not the law."  When the trial reached the stage where Petitioner could have testified, White discussed whether Petitioner would testify with him and explained that the judge would inquire whether he wanted to testify.  When

asked again whether at any time White told Petitioner the jury would hear the details of

his prior conviction if he testified, White responded "I did not say that and I would not say

that." On cross-examination, White again testified:

> A.   Yes, I'll say that once again, I have never advised Mr. Gay that if he
> took the stand, just by him taking the stand it would be revealed that
> he had previously been convicted of a specific crime, in this case,
> murder.  No, I didn't tell him that.
>
> Q    Did you ever dispel that theory to him?
>
> A    I don't even know if it came up.  What did come up was his temper.
> I don't think – if it came up I would have told him what I tell any other
> client, if you testify you can be asked have you previously been
> convicted of a felony.  If you have you answer yes. And then the
> other question is how many, and you say how many.

White testified that his conversations with Petitioner did not extend to any

concerns about details of his murder conviction being disclosed because "we had

decided he wasn't going to testify."  White testified that "[w]e did have a discussion about

the fact that if he took the stand, the fact that he was a convicted felon would come out.

But not the nature of his prior conviction."  *Id*.

Following this testimony, the trial court stated that while Petitioner may have been

confused about the consequences of taking the stand:

> [T]here are certain parts of the law that are so crystal clear and
> unequivocal that lawyers, certainly of Mr. White's expertise and caliber
> and, frankly, lawyers almost out of law school would never misstate and it
> is just an axiom, if you will, this business about what happens to the
> defendant if he takes the stand and he has a prior conviction for a felony or
> crime of dishonesty, what happens. And, frankly, there is no confusion
> about that.
>
> [W]hat I don't believe is that Mr. White misrepresented that fact to you.
> Didn't happen that way, I don't believe it. You may have heard it that way
> but it, just like saying it is nighttime outside right now, Mr. Gay, it is about
> as bright as it gets for this time of the year looking out the window. And it is

that, it is that unlikely that Mr. White would have misstated a fundamental
principle of law, a simple fundamental principle of law as you remember he
did. So, the first prong of the *Strickland* test, which is that we have to first
find that the lawyer for you departed from the standard of case, you know,
that his, that his performance was below the standard of care for lawyers
has not be[en] met.

*Id.*

The First DCA affirmed *per curiam*  without opinion.  *Id*. Exh. LL.

Petitioner filed a second Rule 3.850 motion alleging that the trial judge

participated in plea negotiations and that he first learned of this at the evidentiary

hearing on his first postconviction motion.  Petitioner alleged that the court imposed a

harsher sentence in retaliation for going to trial.  The court denied Petitioner's motion on

the merits and as successive and time-barred since the motion was not based on newly-

discovered evidence.  The First DCA affirmed *per curiam* without written opinion. *Id*.

Exh. RR.  Petitioner filed a "motion for rehearing and/or in the alternative petition for writ

of habeas corpus."  *Id*. Exh. SS.  In this motion, Petitioner presented "[f]or the first time"

a "manifest injustice" claim that he was entitled to habeas relief because the

prosecutor's remarks in closing argument improperly shifted the burden of proof to

Petitioner.  The First DCA denied the motion.  *Id*. Exh. TT.  Petitioner filed a third Rule

3.850 postconviction motion asserting the same "manifest injustice" claim; the trial court

summarily denied the motion and the First DCA affirmed *per curiam* without written

opinion.  *See* Doc. 47.

Petitioner filed a federal habeas corpus petition and, without expressing any

opinion on the merits of Petitioner's claims or any procedural bars, the Court allowed

Petitioner to twice amend the Petition.  Petitioner is proceeding pursuant to his Second

Amended Petition, Doc. 47 (hereafter "Petition").  Petitioner asserts the following grounds for relief: (1) the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence of great bodily harm, permanent disability, or permanent disfigurement; (2) appellate counsel rendered ineffective assistance by failing to raise a double jeopardy/due process issue; (3) trial counsel rendered ineffective assistance by misadvising Petitioner that if he took the stand the jury would learn of the violent details of his prior murder conviction; (4) counsel rendered ineffective assistance by failing to call exculpatory witnesses; (5) counsel failed to present exculpatory demonstrative evidence; (6) counsel failed to object to an erroneous special jury instruction; (7) Petitioner's due process rights were violated when the trial court participated in plea negotiations; and (8) & (9) a manifest injustice occurred when the prosecutor shifted the burden of proof in closing argument.  The latter two claims are the same; Petitioner enumerates them separately because they were raised in different postconviction proceedings in state court. *See* Docs. 47, 53. [2]

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all

---

[2]Respondent concedes that the original Petition was timely, but asserts that claims (8) and (9) in the Second Amended Petition are time-barred because they were insufficiently pled in the original petition and therefore do not relate back to the date of filing.  Because the Court concludes that the claims are procedurally defaulted, it is unnecessary to determine whether they are also time-barred.

federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted.  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id*. at 1302, 1306.  A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010).  To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Respondent contends that part of Petitioner's third claim and all of his fourth, fifth, seventh, eighth, and ninth claims are unexhausted and procedurally defaulted.  *See* Docs. 27, 50.  Petitioner's third claim (ineffective assistance regarding right to testify) will be addressed in detail below.  Petitioner concedes that his fourth and fifth claims

(ineffective assistance regarding exculpatory witnesses and demonstrative evidence) are procedurally defaulted and foreclosed from review. *See* Doc. 53.  Accordingly, those claims will not be addressed further.

Petitioner's seventh habeas claim concerns Petitioner's allegation that the trial court violated his right to due process by initiating or participating in plea negotiations and then giving Petitioner a harsher sentence after trial.  *See* Doc. 47.  The state court rejected this claim on the merits, and also found that the second Rule 3.850 motion in which it was raised was successive, time-barred, and did not present newly-discovered evidence.  App. Exh. PP at 54.   The First DCA affirmed *per curiam* without opinion.

The Court agrees that this claim is procedurally defaulted.  "[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim."  *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (although a procedural bar may be removed if the last state court presented with a claim ignores the bar and reaches the merits, when the trial court's denial of a claim on procedural grounds is affirmed by the appellate court *per curiam* and without opinion, the appellate decision is deemed to have affirmed the procedural bar).  Petitioner points to no cause for failing to properly and timely raise this claim in state court.  As the state court found, Petitioner's assertion that this claim is based on "newly discovered evidence" is without merit; the record reflects that Petitioner first referred to this claim at his sentencing hearing, during which he accused the trial judge of participating in plea negotiations. *See* App. Exh. E. at 251.   Further, the record does not support a conclusion that a

fundamental miscarriage of justice would result if the Court did not consider this claim.

Petitioner's eighth and ninth claims contend that the prosecutor improperly shifted the burden of proof to him in closing argument.  Respondent asserts that this claim is not properly exhausted because it was only presented to the state court by way of Petitioner's motion for rehearing/petition for habeas corpus in the appeal from the denial of his second postconviction motion.  Petitioner could not properly assert new claims in a motion for rehearing following the affirmance of his appeal: Florida law provides that a defendant may not obtain a merits review of a claim raised for the first time in a motion for rehearing.[3]   Petitioner alleges that he attempted to raise the claim again by way of a third Rule 3.850 motion that was summarily denied.  Doc. 53.  Although the order denying that postconviction motion is not included in the record, it is apparent that it would have suffered from the same procedural defects as Petitioner's second Rule 3.850 motion.  Thus, this claim is procedurally defaulted because it was not raised in a procedurally correct manner.   Petitioner has made none of the showings necessary to excuse his default.   Based on all of the foregoing, Petitioner is not entitled to federal habeas review of the claims raised in grounds eight and nine.[4]

---

[3]Florida Rule of Appellate Procedure 9.330 regarding motions for rehearing, clarification or certification provides:

 A motion for rehearing shall state with particularity the points of law or fact that, in the opinion of the movant, the court has overlooked or misapprehended in its decision, *and shall not present issues not previously raised in the proceeding[.*]

[4]Even if this claim were not procedurally defaulted, Petitioner has made no showing that it would provide any basis for federal habeas relief.  "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Davis v. Kemp*, 829 F.2d

The merits of Petitioner's remaining claims (one, two, three, and six) will be addressed below.

## Section 2254 Standard of Review

For properly exhausted claims, there are limitations on the scope of this Court's review.  Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower

---

1522, 1527 (11th Cir. 1987).  "'The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id*. at 1526-27.  A trial is fundamentally unfair if there is a reasonable probability that but for the prosecutor's improper remarks, the outcome of the trial would have been different.  *Williams v. Kemp*, 846 F2d 1276, 1283 (11th Cir. 1988).  Viewing the record in this case as a whole, there is no reasonable probability that but for the prosecutor's comments the outcome of the trial would have been different.

federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also, Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ).  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before

it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

## Claim (1) Denial of Motion for Acquittal

Petitioner contends that the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence that the victim suffered great bodily harm, permanent disability, or permanent disfigurement.  When reviewing a claim of the sufficiency of the evidence on federal habeas review, this Court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Viewing the evidence adduced at Petitioner's trial in the light most favorable to the prosecution, there was ample evidence from which the jury could find that the victim suffered great bodily harm, permanent disability, or permanent disfigurement, including the testimony of the victim, Ms. Lovins, Dr. Weeks, and Dr. Sain.  Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of, federal law, or an unreasonable determination of the facts in light of the evidence adduced at trial.

## Ineffective Assistance of Counsel

Because Petitioner's remaining claims raise the issue of counsel's effectiveness, a review of *Strickland* is appropriate.   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or

the prejudice prong.  *Id*. at 697.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011).  The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law."  *Harrington*, 131 S.Ct. at 785 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id*.  So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging

the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

### Claim (2) Appellate Counsel's Failure to Raise Double Jeopardy

Petitioner asserts that his appellate counsel rendered ineffective assistance by failing to argue on appeal that his second trial for aggravated battery violated double jeopardy because the trial court "acquitted" him of the charge at his first trial. To prevail on this claim, Petitioner must first show that appellate counsel was objectively unreasonable in not raising the omitted issue. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). The exercise of judgment involved in framing an appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent" under *Strickland* for omitting a particular argument. *Smith*, 528 U.S. at 285-86 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")). To demonstrate prejudice, Petitioner must establish a reasonable probability that, but for appellate counsel's alleged error, he would have prevailed on appeal. *Id*. at 286. Petitioner must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel. *Id.* at 289.

In rejecting his motion to dismiss the amended information, the trial court found

that the second prosecution did not violate double jeopardy, and cited *U.S. v. Scott*, 437

U.S. 82 (1978) as support.  App. Exh. 46.  In *Scott*, the Supreme Court held that a trial

court's ruling amounts to an "acquittal" for double jeopardy purposes "only when the

ruling of the judge, whatever its label, actually represents a resolution [in the defendant's

favor] correct or not, of some or all of the factual elements of the offense charged."

*Scott*, 437 U.S. at 97 (internal quotation and citation omitted).   When a defendant

deliberately chooses to seek termination of a prosecution "on a basis unrelated to

factual guilt or innocence of the offense of which he is accused, [he] suffers no injury

cognizable under the Double Jeopardy Clause," if the prosecutor is permitted to

challenge the trial court's ruling in defendant's favor and then, if successful, reprosecute

the defendant.  *Id*. at 99.  That is precisely what happened here. Petitioner's trial counsel

initially succeeded in persuading the trial court to dismiss the aggravated battery charge

on a basis which did not depend upon Petitioner's guilt or innocence, and "[h]e was thus

neither acquitted nor convicted" of the charge for double jeopardy purposes.  *Id*.

It is clear that this claim had no chance of success on appeal.  Accordingly,

Petitioner has failed to show that his appellate counsel was objectively unreasonable for

failing to raise this issue, and has failed to show that the state court's rejection of this

claim was contrary to, or an unreasonable application of, *Strickland*.

## Claim (3) Counsel's Interference with Right to Testify

Petitioner contends that his trial counsel rendered ineffective assistance by

misadvising him that the details of his prior murder conviction would be revealed to the

jury if he testified.  Petitioner further contends that the trial court "recognized that

Petitioner had misinterpreted his attorney's advice" and that Petitioner's

misunderstanding provides a basis for federal habeas relief as an ineffective-assistance claim.  *See* Doc. 47.  The Respondent contends that Petitioner did not exhaust this latter variation of his claim in state court because although he raised it in his appeal from the denial of his postconviction motion he did not initially present the claim to the trial court. Because these ineffective-assistance claims are interwoven, and it is clear that Petitioner is not entitled to habeas relief, the Court concludes that the claims may be rejected on the merits notwithstanding any failure to exhaust.  *See* 28 U.S.C §
2254(b)(2) (application may be denied on the merits notwithstanding failure to exhaust).

A criminal defendant has a fundamental right to testify in his defense.  *Rock v. Arkansas*, 483 U.S. 44, 52 (1987).  "Although often framed as a right to testify, it is more properly framed as a right to choose whether to testify."  *United States v. Hung Thien Ly*, ___ F.3d ___, 2011 WL 2848477 (11th Cir. 2011) (citing *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir.1992) (en banc)).  "Like other fundamental trial rights, the right to testify is truly protected only when the defendant makes his decision knowingly and intelligently."  *Hung Thien Ly*, 2011 WL at *4 (citations omitted).  "In cases where a defendant is represented by counsel, counsel is responsible for providing the advice needed to render the defendant's decision of whether to testify knowing and intelligent." *Id*.  (citing *Teague*, 953 F.2d at 1533).

The state court rejected this claim on postconviction review following an evidentiary hearing at which Petitioner and White both testified.  Based on the testimony, the state court made an explicit factual finding that it was not possible that White made the statement that Petitioner alleged he made regarding the consequences of testifying.   In making this finding, the state court expressly credited White's testimony

over Petitioner's.  Further, while the court acknowledged that Petitioner "may have been confused about the consequences in taking the stand," the court specifically found that such confusion could not have stemmed from the statement that Petitioner alleged White made because White did not make the statement.  The state court concluded that "Mr. White knows from the trial experience that he had with you, just as I know from witnessing your performance today, that you were a risky witness on the stand, I guarantee you.  I've heard you today, I've heard the comments you've made from the table under your breath.  I watched your demeanor on the stand.  And I would have – I'm telling you one thing, I'm confident Mr. White had a conversation with you about the consequences of you taking the stand.  So you may think he was substandard in his performance, I don't."  The state court accordingly found that White did not perform deficiently under *Strickland*.  App. Exh. HH.

The state court's findings as to witness credibility are presumptively correct.  *See Brown v. Head*, 272 F.3d 1308, 1314 (11th Cir. 2001).  The state court's factual finding that White did not make the statement alleged by Petitioner also is afforded a presumption of correctness, and it is Petitioner's burden to rebut the presumption of correctness by presenting clear and convincing evidence to the contrary.  28 U.S.C § 2254(e)(1).  Petitioner points to no evidence that rebuts the state court's finding that White did not make the statement, and therefore did not perform deficiently.  Accordingly, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, *Strickland*.

## Claim (6) Failure to Object to Special Jury Instruction

Petitioner contends that his trial counsel rendered ineffective assistance by failing to object to the special jury instruction that the defendant takes "his victim" as he finds her notwithstanding any preexisting conditions that make the victim more susceptible to injury.  Doc. 47.  Petitioner concedes that counsel did in fact object to the instruction, but withdrew the objection because he wanted to comment on the victim's physical condition.  Petitioner argues that counsel's actions do not reflect sound trial strategy, and that it was improper for the instruction to reference Ms. Finch as a "victim" since his defense theory was that she injured herself.  *Id.*  The state court rejected this claim on postconviction review because it found that the decision to withdraw the objection was based on counsel's reasonable trial strategy.  App. Exh. R.

To prove ineffective assistance of counsel for failing to object to a jury instruction, the Petitioner must show that the instruction was improper; that a reasonably competent attorney would have objected to the instruction; and that the failure to object was prejudicial.  *Daugherty v. Dugger*, 839 F.2d 1426, 1428 (11th Cir.1988) (citing *Strickland*, 466 U.S. at 686-87).  In this case, the special jury instruction was not an improper statement of Florida law.  *See Brate v. State*, 469 So.2d 790, 793 n.2 (Fla. 2nd DCA 1985) ("it is well settled in Florida that a criminal takes his victim as he finds him and 'cannot be excused from guilt and punishment because his victim was weak and could not survive the torture he administered.'").

Petitioner's argument that counsel should have objected to the term "victim" is specious.  The special instruction was requested by the prosecutor, which premised the case on establishing that Finch was indeed a "victim" of aggravated battery.

As Petitioner notes, his defense theory was that "Ms. Finch's injuries were sustained when she stumbled and fell in a drunken stupor." Doc. 53. As the state court found, it was a reasonable trial strategy to withdraw the objection to the instruction so that counsel could pursue the theory in closing argument by noting that Finch's broken tooth "was decayed and had a problem anyway," and arguing that Finch's injuries were consistent with having fallen forward onto the tree roots. App. Exh. D(2) at 90. Given the deference that is afforded to trial counsel's strategic decisions and to the state court's assessment of counsel's performance, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of, *Strickland*.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for a Writ of Habeas Corpus, Doc. 47, be **DENIED,** and that a certificate of appealability be **DENIED**.

**IN CHAMBERS**  this 23rd day of August 2011.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.